So now we hear arguments in Malkasian v. Mukasey. Mr. Finnegan, are you there? Yes, I am, Your Honor. All right. You have ten minutes. We'll watch the clock from here. So do you want to save any time for rebuttal? Yeah, two minutes. All right. Thank you. You should proceed. Okay. Thank you very much. First of all, I want to apologize for the confusion I've caused by fixing up the location of the court and also thank the court and the staff for the gracious accommodation of allowing me to proceed telephonically. In this matter, I'd like to get straight to the point, which I believe is that there is a viable case for asylum that's literally contained within the immigration judge's decision. The BIA decision makes commentary, but it more or less adopts the IJ decision, its reasoning, and its reasons for the asylum denial. And I specifically want to point the court to the record of certified administrative record pages 63, 64, and also 58. And in there, I think you can see that, number one, the judge finds the applicant credible. Secondly, the judge notes in his decision that he makes a comment on page 63 at the bottom, 63 of the record, which is page 21 of the judge's decision, but 63 of the record, where he said, if one accepts the testimony of lead respondent, then it is politically motivated retaliation because of the support of the lead respondent head for an opposition party. And I believe that right there, the judge is saying that it's political. So in the BIA decision, they say that there's no nexus to the politics. He's been hospitalized on a couple occasions. The judge says, if you believe the testimony of respondent, it's politically motivated. And he finds credibly that he did testify credibly. So I believe the judge is obligated to accept that testimony, not put that qualifier if in front that the judge does. And the BIA did not make that assessment in its decision. Counsel, precisely what page are you referring to? I'm going to go to it and read it again. Yes, Your Honor. Page 63 at the very last line. Fifty-three? Sixty-three. Sixty-three. Okay. Of the bait stamp, 63, page 21 of the decision. Right. One thing, is your client a citizen of Georgia or of Armenia? Hello? Yes. Or both? He's a citizen of Armenia, but he was living in Georgia. It wasn't clear from the record, and the IJ says he's a citizen of Georgia, but then it's a little bit ambiguous. A former citizen of the USSR. Right. A former citizen of the USSR. It is ambiguous. Well, so what I was leading to is where was he supposed to be when he was going to be removed? Where did the IJ direct it? Do you recall? Off the top of my head, I don't recall. I know his last country of residency where he was living was Armenia. Oh, I see. I have it now. Armenia. But he is not an Armenian citizen. Is that true? On page one of his I-589, it does say he's an Armenian citizen. Okay. But I believe there was some confusing testimony in there. Okay. Also, one other point is, at that same page, 63, if you look a little bit above that, he talks about the incident in Georgia. There's three incidents in Georgia contained on page 63 of the record, page 21 of the judge's decision. And the judge basically discounts the first two incidents because he says he can't glean from the record that he was specifically targeted because of his Armenian ethnicity. But then he notes in the third incident, dated April 15, 1997, the judge says this particular incident would appear to be one incident in which legitimately the respondent could assert that it was aimed specifically at him. And what was that incident on April 15? April 15, that was when ‑‑ I have to look for it. Well, that's the linchpin of your argument, is it not? Well, that's the part, but I think the more argument is if he's a citizen of Armenia, he can't go back to Armenia. And that incident is from Georgia, the April 15 incident. Well, the March 25 incident was in which country? March 25, 2000, was in Armenia. I see. Well, that's why the citizenship gets to be a little important. And I note that the IJ says that you tried to correct it, or whoever was representing him at the time tried to correct it, and that he was a citizen of Georgia. I don't know. I mean, it does make some difference in the analysis, I think. Yes, I would agree. I think usually when it comes down to that, the focus would be on the last country he was at and whether the government could return him to that country. And in this case, that would be Armenia. You have about four minutes left. Do you want to save it for rebuttal? Yes, please. Okay. Hear from the government. Good morning, Your Honors. My name is Julie Fleur, and I'm here to represent the Department of Justice. The first point that I wanted to bring up is something – did you get the 28J that I submitted? I submitted a 28J. It was mailed from our office FedEx on Monday. There was a problem with FedEx that I learned about this morning when I got here. Anyways, I submitted a 28J. I don't think I've seen it. I haven't seen it. What case did you want to cite? Okay, well, anyways, I was citing – Was that this? That's correct. That's correct, Your Honor. I wanted to apologize to you for not getting to it this morning, but the point of the 28J is that it's a jurisdictional issue, a matter of obstruction, that petitioner has failed to raise any issues in his brief to the board, which is part of the confusion in this case, that the board didn't exactly know what to address because – Well, this is not a new case, though. No, no, it's not a new case. I just wanted to let you know because my office, Office of Immigration Allegations, did not write this brief. This was not our case. It was farmed out. We got this brief. When we looked at it, we realized there's an exhaustion issue here that hasn't been raised, so I wanted to give you the 28J to let you know that this is an issue and that because petitioner has failed to raise any issues to the Board of Immigration Appeal, that there's a jurisdictional bar that this court can only look at issues that have been raised previously when administrative matters are exhausted. Let me get this straight. You're hitting us with an exhaustion issue. That's correct. That's raised for the first time in a 28J letter. That's correct. And I'm doubting that counsel for the other side even got this thing, especially if he went to Pasadena. Maybe he did. I faxed it to him. You faxed it to him? I had providing service. But what are you saying he didn't exhaust? My argument is that in his brief for the Board of Immigration Appeals, there were no legal issues raised whatsoever. What did he raise? It was merely a recitation of his testimony saying this is what I testified to, and he raised that there was a problem with the interpreter, which he has now dropped that argument. But he was basically arguing that the he's re-arguing past persecution and so forth. That's on the table, wouldn't you say? Well, he failed to address anything in his appeal to the Board of Immigration Appeals, and basically he said, here's my testimony. Well, but the BIA seemed to think he was raising past persecution. They said it's generalized conditions of violence. It doesn't work. It's not individualized enough. The problem is, I mean, for a lot of reasons. You can waive exhaustion. The government can do that. And the BIA can do that by addressing the issues on the merits. The BIA did address the issues on the merits. So since they engage in a reasoned decision and we look to the BIA decision and not the IJ decision when it does that, then why isn't that on appeal? Why isn't a fair game on appeal? Well, as I understand it, Your Honor, that exhaustion is a jurisdictional issue. You can waive exhaustion. Okay. Well, according to Barron v. Ashcroft, this Court, 2004, says that exhaustion is jurisdictional and that it can't be raised even if the Board has addressed it. This isn't the crux of my argument. Good. Why don't you move on to the crux of your argument. Okay. As to your question, I'll just address this because you did address it to Petitioner. As to your question of where he's a citizen of, Petitioner's brief itself says on page 9 of his own brief submitted to this Court, he's a citizen of Georgia. He has also testified he doesn't have a passport from Georgia. He has a passport from Armenia. He's testified he can't go back to Georgia because he doesn't know anyone there, doesn't have any friends or family. And he has testified he would have no problem going back to Armenia, although he's a citizen of Georgia.  but his testimony is consistent that he was a citizen of Georgia, is not a citizen of Armenia, but he holds an Armenian passport. So the events that he has described in past persecution in Georgia, the Board has found that these were general conditions of violence and not past persecution. The things that happened in Georgia were in 1994 he was brought to the police station and he was beaten. He testified specifically they were giving a hard time to not just me, they were giving a hard time to everyone. He said, I was not alone in the police station. I saw many other people there. In 1996 he said five armed men came to his house and they said, why are you still here in Georgia? You need to leave. He said it was the exact same as what happened the first time. He said, I don't know if it was police. I don't know if it was gangsters. I don't know who did this. And in his asylum application he said that at this point there was a lot of turmoil going on and many Armenians were trying to leave the country. Now the third incident, and this is the one that Petitioner's Council has brought up, happened in April of 1997. He testified that four men wearing police uniforms came to his house. They beat him. They said, why are you still here? And what the immigration judge found was that this particular incident would appear to be the one where he could possibly base a claim that it was specifically aimed at him. The immigration judge did not find this was specifically based on him. He said this would be the one out of any, if he was going to base it on one, this would be the one. Again, we have that elusive word appeared. He said it appeared to be specifically aimed at Petitioner. I read that, that it was aimed at Petitioner. Well, if I could point you to the asylum application, what he says on the asylum application regarding this incident, he says that there was a raid arranged by the Georgian nationalists. They raided the neighborhood, that it was a day of massive oppression and removal of Armenians, and we were the victims of this massive raid. Now what the board says in adopting the decision of the immigration judge, the board did not adopt this specific finding where the immigration judge said this appeared to be individualized. The board said we agree with the immigration judge to the extent the immigration judge found that they failed to meet their burden and that they were subject to random acts of violence. The board did not adopt the immigration judge's finding that this appeared to be individualized or any of his other findings. They said we adopt the immigration judge's decision to the extent, only to the extent that he failed to meet his burden and that there was random acts of violence. Therefore, the Board of Immigration Appeals did not agree with the immigration judge saying this was a personalized attack. Well, the BIA didn't say all of that. They just said we agree to the extent we found the respondents failed to meet their burden of proof. Right. Well, they didn't specify that, but I think by saying we agree to the extent, it can be reasonably read to say they don't agree with everything the immigration judge said, but to the extent that he did say this, we do adopt that. The other incidents that Petitioner has complained of were in Armenia. Now, the first one was in 1991, and this is when he was fired from a job because Armenia was going through independence and there was a lot of turmoil, and this was pretty much he said all the directors of all the large agencies, anyone who had a high position, they were fired, and I was part of that. He then left Armenia. He came to the United States from 1996 to 1997. He didn't apply for asylum. He then returned to Armenia, and he said in his testimony that he became involved in politics. Now, as the immigration judge noted, this is not in his asylum application anywhere. But the IG accepted him as credible, and the BIA did not dispute that finding. That's correct. But the reason I bring this up is because this goes to sufficiency of evidence, of showing past persecution, not saying that it's not credible, but saying when you're looking at is what happened to him in Armenia past persecution, this goes to the finding of past persecution, because what the immigration judge found is that, one, he failed to establish past persecution, and two, he didn't show individualized events. So in stating that he didn't say this in his asylum application, this fails to establish the level of evidence needed for past persecution. He also said he has a daughter in Armenia. Well, just a second before you leave that topic. The March 25th episode, that was in Armenia, wasn't it? The March of 2000 was in Armenia. That's correct. So he was arrested in March of 2000. That's correct. Why isn't that past persecution? Well, the immigration judge took into account a lot of things. I know that he did find him credible, so I'm not saying that what he said wasn't true. But in saying that you didn't mention it in your asylum application or to the asylum officer, you returned to Armenia after being in the United States and not claiming asylum. Your daughter lives in Armenia. She's lived there her entire life, and she has never suffered anything. Why does that matter in terms of a finding of past persecution? Well, I think they're all just factors that the immigration judge took into consideration in total in saying that you did not establish past persecution. And as Your Honors mentioned before, it kind of does make a difference where he's from, although his order says removed to Armenia, and in the alternative, Georgia, that he's a Georgian citizen. Well, perhaps. That's what his testimony is. But the IJ orders him removed to Armenia. Right. And if you focus on Armenia, he's got this episode that would seem to rise to the level of past persecution if you judge him credible. Now, it may well be that because his daughter is living there and because of the other factors you mentioned, that the government would be able to show that you have changed country conditions and rebut the presumption. But if he's established past persecution, he's entitled to the presumption. Right? Well, as the immigration judge said, he did not establish past persecution. And the immigration judge also found that even if he had shown past persecution or subjective fear, that there's no objective basis for future persecution in Armenia. He testified that because Petitioner stated the reason he's afraid to go to Armenia is because of a job he held in 1991. He was this high-ranking sports official, and he's afraid the government is going to be after him because of that. When asked why would they still be after you, that's what he said. In 1991, I was this big official, and they're going to come after me because of that. So what the immigration judge said is even if there was past persecution, which he found there wasn't, that there's no well-founded fear of future because this job was in 1991, and there's no reason, given his age and given that the job ended in 1991, that there would be a well-founded fear of future. That's with respect to Armenia. That's correct. What about Georgia? With respect to Georgia, the immigration judge said, well, there's no past persecution, and said that there's no well-founded fear and didn't give specifics as to why. If we disagree with you, would we have to send it back pursuant to Ventura to take into consideration changed conditions in Georgia, for example? I believe so. Thank you, Your Honors. Thank you. Mr. Finnegan, you've got a couple of minutes for rebuttal. Yes, Your Honors. Thank you. I believe in the BIA decision, the reason they don't find past persecution is not because the harm didn't rise to the level necessary, but because, as it states on page 2 of the BIA decision, page 3 of the record, we agree with the immigration judge to the extent that he found respondents failed to meet their burden of proof and that they were subject to random acts of violence. I think the key is that he's calling it random acts of violence, and that's why they're saying he didn't sustain the burden of proof. But if you look at the IJ decision, the April 15th incident, he's saying he makes a legitimate claim that he was targeted on that occasion. Well, doesn't that fall under the rubric of a single act? Usually a single act isn't enough to establish what you have to establish in a case like this. Right, usually, but there were a few other incidents that, for some reason, the judge didn't find them as he was targeted, but they were definitely because of his ethnicity. And another point, the judge does talk about the April 15, 1997 incident on page 58 of the record. Okay. Anything further? I'm sorry, I'm sorry, page 55 of the record. Four armed men came with police uniforms and beat him. And, you know, police uniforms and they were beaten. I think even if it's one incident, that's pretty severe that police officers would beat someone at their own home. That would probably rise to the level of more than just a single incident because it was a severe incident. Also, as far as the Georgia goes, I think that March 25, 2000, the judge even notes himself that he thinks if you take his testimony as credible, which he's supposed to do, that that would qualify. Like I said, bottom of page 63 and page 64. It's my understanding that when someone gets an Armenian passport, they are an Armenian citizen, and that's why I'm making the representation today that I believe he is an Armenian citizen, and that's why I believe the judge issued the initial removal order to Armenia because the judge felt the same way. I think if you don't really need to look at Respondent's BIA brief, everything's contained in the BIA decision and the IJ decision, I believe there is no exhaustion issue here because it's contained in the immigration judge's decision. Now, the BIA decision doesn't necessarily, they adopt the IJ's decision in its entirety, but it doesn't necessarily point out what it's disagreeing with either. So I'm presuming that, you know, 99% of it they are adopting from the IJ's decision. That's the way I read the BIA decision. So what's your position on exhaustion? My position is it's not really an issue in this case because I'm looking at the decision, and it's stated in the decision that, you know, one, he was targeted specifically on April 15th in Georgia, and secondly, that his March 25th, 2000 incident was political in Armenia. So it's there in the record, you know, whether it's argued in a brief or not, it is not there. Number one, number two, it is, he did submit a brief where I think he did make, he filed that BIA brief pro se. Do you know whether or not, or what he asserted in his brief to the BIA? You know, it's kind of a rambling brief that he filed pro se, but it is in the record at page 16. I didn't bring it with me to the argument today, but we can check on it later. Your time has expired. Is there any final remark you want to make? No, thank you, Judge. All right, very good. The case is through. It will be submitted.
judges: Trott,thomas, Hogan